**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRENDA KRIVATCH,** | : | |
| | : | **Case No. 2:26-cv-00201** |
| **Plaintiff,** | : | |
| | : | **Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Chelsey M. Vascura** |
| **SOCIAL GAMING LLC, *d/b/a* FORTUNE COINS,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

**OPINION AND ORDER**

This matter comes before this Court on Defendant Social Gaming LLC, d/b/a Fortune Coins' Motion to Compel Arbitration and Stay this Action Pending Resolution of Arbitration. (ECF No. 18). For the following reasons, this Court **GRANTS** Fortune Coins' Motion to Compel Arbitration.

## I. BACKGROUND

Plaintiff Brenda Krivatch is an Ohio resident who played casino-style games on Defendant Fortune Coins' website from December 9, 2022 to May 21, 2025. Defendant Fortune Coins is a social gaming website, administered by an affiliate located in Ontario, Canada, that provides services across many states, including Ohio. (Fortune Coins' May 20, 2025 Terms and Conditions at 1) (hereinafter "T&C").[1] Krivatch brought this putative class action on October 14, 2025, invoking this Court's diversity jurisdiction and alleging violations of the Ohio Gambling Loss Recovery Statute, O.R.C. §§ 3763.02, *et seq.*, and the Ohio Consumer Sales Practice Act, O.R.C. §§ 1345.01, *et seq.* She also seeks a declaratory judgment under 28 U.S.C. § 2201.

[1] The Terms and Conditions are attached as Exhibit E to the German Declaration, Exhibit 1 to Defendant's Motion to Compel Arbitration (ECF No. 18).

Krivatch claims that Fortune Coins constitutes a gambling operation, illegal under Ohio state law, that deceptively manipulates users, including the most vulnerable: minors and individuals struggling with gambling disorders. (¶¶ 14, 37, 45, 78–81).[2] Krivatch points to the Fortune Coins website as having a casino-style atmosphere, euphemistically offering "social gaming," "promotions," and "sweepstakes" as a pretext for illegal gambling. (¶¶ 43–46, 68).

To access Fortune Coins' website, users, including Krivatch, must accept Fortune Coins' Terms and Conditions. (German Decl. ¶ 7).[3] Upon creating an account on Fortune Coins' website, authorized users receive a virtual currency called "Gold Coins" that they can use in casino-style games, like blackjack, slots, and other classic table games. (¶¶ 7, 59–60). Gold Coins are not redeemable for real-world prizes. (German Decl. ¶ 5). Users may also receive a separate virtual currency, "Fortune Coins," through promotional sweepstakes or as a bonus for purchasing Gold Coins. (German Decl. ¶ 6). Unlike Gold Coins, "Fortune Coins" are redeemable for real-world prizes, including cash or cash-equivalent rewards. (¶ 59).

Section 17 of the Terms and Conditions permits Fortune Coins to "amend, alter, delete, or add to this Agreement at any time without notice to you." (T&C § 17.1). The Terms and Conditions continue to explain, "[a]ny changes made to this Agreement shall take effect immediately upon their publishing to the Website and *your continued access or use of the Website*." (T&C § 17.2) (emphasis added). From the time Krivatch first created her account on Fortune Coins' website in December 2022, she agreed to six iterations of Fortune Coins' terms and conditions. (German Decl. ¶ 16).

---

[2] All references to "Compl.," "Complaint," or parenthetical paragraph citations "(¶_)" cite to Plaintiff's Complaint (ECF No. 1), unless otherwise stated.
[3] The German Declaration is attached in support of Defendant's Motion to Compel Arbitration (ECF No. 18) as Exhibit 1.

Section 11 of the Terms and Conditions includes an arbitration provision and class action waiver. (T&C § 11). By agreeing to the Terms and Conditions, each prospective Fortune Coins user submits to binding arbitration in Ontario, Canada:

> [A]ny past, pending, or future dispute, claim or controversy arising out of or relating to any purchase or transaction by You, your access to or use of the Service, or to this Arbitration Agreement, the Terms of Use, Privacy Policy or any other rules that you are required to accept in order to use this Website, Mobile Application or the Service (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of this Agreement or the Terms of Use) (a "Dispute"), shall be determined by arbitration, including claims that arose before acceptance of any version of this Agreement.

(T&C § 11.2). The arbitration agreement also contains a broad delegation clause that:

> [D]elegate[s] to the arbitrator the exclusive jurisdiction to rule on his or her own jurisdiction over the Dispute, including any objections with respect to scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims or counterclaims presented as part of this Dispute.

(T&C § 11.2).

Fortune Coins moved to compel arbitration and stay this case pending resolution on December 15, 2025. (ECF No. 18). Since Fortune Coins provides for arbitration to take place through ADR Chambers in Canada, it seeks to compel arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958. (*Id.* at 1). In response, Krivatch argues that the arbitration and delegation clauses that Fortune Coins seeks to enforce lack consideration, they never became an enforceable contract. (ECF No. 20 at 2). Alternatively, she argues that any contract formed was null and void under the Convention because it contravened Ontario public policy, abolished a statutory right, and was entered into due to a

mistake of fact. (*Id.*). Fortune Coins then replied in support of its Motion. (ECF No. 21). This matter is ripe for review.

## II. LAW AND ANALYSIS

The United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 governs international arbitration agreements. Chapter 2 of the Federal Arbitration Act codifies the Convention in American law. *See* 9 U.S.C. § 201. Actions that "fall[] under the Convention shall be deemed to arise under the laws and treaties of the United States," and federal district courts have original jurisdiction over their actions regardless of the amount in controversy. 9 U.S.C. § 203. The Convention instructs that when faced with an international arbitration agreement, federal courts should "refer the parties to Arbitration" unless they "find[] that the said agreement is null and void, inoperative, or incapable of being performed." Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. II, § 3, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38. The Federal Arbitration Act provides for orders compelling arbitration. 9 U.S.C. § 206.

When the Convention governs an agreement, district courts have limited discretion. "As other courts construing the Convention's language have observed, 'there is nothing discretionary about Article II(3) of the Convention.'" *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 469 (6th Cir. 2009) (citations omitted). "[D]oubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

In evaluating motions to compel arbitration and whether the existence of an agreement is valid, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the

non-moving party." *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014) (Graham, J.).

There are two central issues in this case: (1) whether the parties entered into a valid agreement; and (2) whether the matter is arbitrable. Because the agreement is valid and the matter arbitrable, this Court must compel arbitration.

**A. Convention Applicability**

The Convention applies to an arbitration agreement when: (1) there is a written agreement; (2) the agreement provides for arbitration in a signatory country; (3) the agreement arises out of a commercial legal relationship; (4) a party to the agreement is not an American citizen, or the commercial relationship has some reasonable relation with one or more foreign states. Convention art. II, § 1; 9 U.S.C. § 202.

Plaintiff takes issue with the first element, arguing the Terms and Conditions fail to include adequate consideration for a valid written agreement. (ECF No. 20 at 4–5). Defendant counters that adequate consideration was given by a mutuality of obligation from the Terms and Conditions' clickwrap agreement. (ECF No. 21 at 3–4).

Arbitration is a matter of contract. *Rent-A-Center, W. Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Therefore, in resolving the first element of the Convention, this Court must determine whether the most recent version of the Terms and Conditions is a valid and enforceable agreement, which hinges on principles of contract formation. *See In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 880 (6th Cir. 2021) (resolving formation challenges to an arbitration agreement before challenges to enforceability). Principles of state contract law determine whether there is formation of a valid agreement. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)

("When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . apply ordinary state-law principles that govern the formation of contracts.").

Consideration is a necessary element of contract formation. *See Kostelnik v. Helper*, 96 Ohio St. 3d 1, 3 (Ohio 2002). A promise constitutes consideration for another promise when it creates a binding obligation. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000). A promise is not binding if it is illusory, meaning the promisor "retains the right to decide whether or not to perform the promised act." *Id.* When the promisor can modify any term of the agreement at any time, its promises are illusory and the contract is therefore void and unenforceable for lack of consideration. *Day v. Fortune Hi-Tech Mktg., Inc.*, 536 F. App'x 600, 604 (6th Cir. 2013).

Krivatch argues that the arbitration provision and its delegation clause constitute an illusory promise. (ECF No. 20 at 9–10). She suggests that Fortune Coins "retains the right to 'amend, alter, delete, or add to this Agreement at any time without notice to you' and that '[a]ny changes made to this Agreement shall take effect immediately . . ." (ECF No. 20 at 9) (quoting T&C § 17.1). This construction misunderstands the contractual language. Krivatch's strategic placement of ellipsis ignores the next section of the Terms and Conditions, which establishes that "changes made to this [a]greement shall take effect immediately upon their publishing to the [w]ebsite and your continued access or use of the [w]ebsite." (T&C § 17.2). This additional context is crucial because "continued access" of Fortune Coins' website requires users to acknowledge and accept changes to the Terms and Conditions via a pop-up box stating: "[b]y checking this box I confirm that I have read these documents and I accept all of the updates within these documents." (German Decl. ¶ 13). Without clicking on this pop-box, users may not access Fortune Coins' services. (*Id.*). In fact, Krivatch agreed to six updated terms and conditions, allowing her to use Fortune Coins'

website over the course of three years. (*Id.* at § 16). While Fortune Coins can modify the agreement, its promises are not illusory. *Compare De Angelis v. Nolan Enters., Inc.*, 2018 WL 4566280 (S.D. Ohio Sept. 24, 2018) (Marbley, J.) (finding promises illusory where a party could unilaterally modify or cancel the terms of the agreement "at any time *without notice*") (emphasis added). Unlike the agreement at issue in *De Angelis*, here, a user of the Fortune Coins website would receive notice and an opportunity to decide whether to use the service before agreeing to updated terms. Krivatch was prompted to consider and renew her acceptance via a pop-up box; she could elect whether to accept proposed modifications to the agreement or not. In light of this clickwrap agreement, mutuality and consideration exist. *See In re StockX*, 19 F.4th at 881–82 (observing plaintiffs continued use of defendant's website via clickwrap agreement satisfied mutuality). Therefore, Krivatch and Fortune Coins formed a valid contract, satisfying the first of four factors regarding the application of the Convention.

The other three factors are not in dispute. First, both the United States and Canada have acceded to the Convention. *E.g.*, *Westbrook Int'l, LLC v. Westbrook Techs., Inc.*, 17 F. Supp. 2d 681, 684 (E.D. Mich. 1998) ("Both the United States and Canada are members of the Convention."). Second, the agreement arises out of the commercial relationship between Krivatch and Fortune Coins. Third, the relationship has a reasonable relation to a foreign state as Fortune Coins is administered in Canada, and provides for binding arbitration to occur through ADR Chambers in Ontario, Canada. (T&C § 11.6). Thus, the Convention governs the agreement.

**B. Arbitrability**

Federal law counsels that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

That federal policy "applies with special force" for arbitration agreements governed under the Convention. *Mitsubishi Motors Corp. v. Soler-Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

When the four factors establish the Convention's application to the agreement, courts must compel the arbitration unless the agreement is "null and void, inoperative, or incapable of being performed." Convention art. II, § 3. The "null and void" language has been construed narrowly because "the signatory nations [to the Convention] have effectively declared a joint policy that presumes the enforceability of agreements to arbitrate." *Rhone Mediterranee Compagnia v. Lauro*, 712 F.2d 50, 54 (3d Cir. 1983). The Supreme Court noted "the goal of the Convention . . . was to encourage the recognition and enforcement of commercial contracts and to unify the standard by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 (1974). Thus, in order to render a Convention-governed agreement "null and void," courts only recognize "defenses that can be applied neutrally on an international scale (*e.g.*, fraud, mistake, duress or waiver)." *Ambrosia v. Blazesoft Ltd.*, 2025 WL 2976477, at *4 (N.D. Ill. Oct. 21, 2025) (citations omitted). Arguments concerning illegality cannot be "applied neutrally on an international scale" as there is "no common standard the [c]ourt could apply to determine if the arbitration agreement constitutes an unlawful gambling contract." *Id.*

Here, the Terms and Conditions provision contains a broad delegation clause that:

> [D]elegate[s] to the arbitrator the exclusive jurisdiction to rule on his or her own jurisdiction over the Dispute, including any objections with respect to scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims or counterclaims presented as part of this Dispute.

(T&C § 11.2). In light of the Convention's application and strong federal policy favoring arbitration, in order to avoid arbitration, Plaintiff must prove this delegation clause to be "null and

void." Convention art. II, § 3; *Mitsubishi Motors Corp.*, 473 U.S. at 631. Krivatch argues that any contract would be null and void as violative of Ontario's public policy, abolishing a statutory right in Ohio, and the product of a mistake of fact. These alternative arguments do not fall within the narrow scope of the "null and void" language, and thus fail.

All three arguments rely on the premise that Fortune Coins' services are illegal under Ontario and Ohio law. First, Plaintiff argues Fortune Coins' services are unlawful in Ontario under the Gaming Control Act of 1992. (ECF No. 20 at 12). Second, Plaintiff argues that compelling arbitration would waive her rights under Ohio's Gambling Loss Recovery Statute. (*Id.* at 13). Third, Plaintiff argues that she agreed to the Terms and Conditions under the "mistake of fact that Fortune Coins' services were legal." (*Id.* at 14). While Plaintiff attempts to repackage this final argument of illegality under the internationally cognizable defense of "mistake," it fails under the Convention because it requires a determination of legality that cannot be applied neutrally on an international scale. Rather, all her arguments depend upon application of tribunal-specific laws. Having this Court answer those questions would contravene the purpose of having uniform standards in international disputes. The questions regarding the legality of Fortune Coins' services are the questions for the arbitrator, not this Court. *Ambrosia*, 2025 WL 2976477, at *5.

To the extent that Plaintiff characterizes her arguments as going to public policy, and not illegality, they are inappropriately timed. Public policy arguments have their roots in Article V of the Convention: "Recognition and enforcement of an *arbitral award* may also be refused if the competent authority in the country where recognition and enforcement is sought finds that: . . . (b) [t]he recognition or enforcement of the award would be contrary to the public policy of that country." Convention art. V (emphasis added). The problem for Plaintiff is that Article V applies at the award-enforcement stage, not at the arbitration-enforcement stage. *See Escobar v.*

*Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1287 (11th Cir. 2015) ("Because Article V applies only at the arbitral award-enforcement stage and not at the arbitration-enforcement stage . . . such public-policy arguments cannot be raised at the arbitration-enforcement stage."); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 372 (4th Cir. 2012) ("The public policy defense, on the other hand, may only be asserted at the second stage of the arbitration-related court proceedings, the 'award enforcement stage.'") (citations omitted); *see also George Fischer Foundry Sys., Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206, 1210 (6th Cir. 1995) ("[A]rbitration should go forward even if there is a chance that . . . statutory rights will not be fully recognized, because, should that occur, the aggrieved litigant may request a federal court, at the *award-enforcement stage*, to determine whether the arbitration award violates public policy.") (emphasis in original). In sum, Plaintiff's alternative arguments attacking the agreement as null and void fail.

In the past year, at least three other federal district courts have been confronted by user lawsuits against Fortune Coins, and have ultimately enforced the same or similar arbitration provisions. *Ambrosia v. Blazesoft Ltd.*, 2025 WL 2976477, at *5 (N.D. Ill. Oct. 21, 2025); *Boatner v. Social Gaming LLC*, 2025 WL 3281509, at *3 (S.D.N.Y. Nov. 25, 2025); *SCPS LLC v. Kind Law*, 2026 WL 96898, at *12 (C.D. Cal. Jan 8, 2026). This Court joins them.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay this Action Pending Resolution of Arbitration (ECF No. 18) is hereby **GRANTED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 29, 2026**